UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Malveaux and Senior Judge Frank

JOSEY N. NOBLIN

v.      Record No. 1252-20-2

HALIFAX COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
JULY 27, 2021

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
J. William Watson, Jr., Judge

(Suzanne P. Inge, on brief), for appellant.

(Matthew W. Evans; Michael T. Trent, Guardian *ad litem* for the
minor children; Gravitt Law Group, P.L.C.; The Trent Law Practice,
PLC, on brief), for appellee.

Josey N. Noblin (mother) appeals the circuit court's orders terminating her parental rights to

her children.  Mother argues that the circuit court "erred in finding by clear and convincing evidence

that termination [of her parental rights] was in the best interests of the children."  Upon reviewing

the record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly,

we summarily affirm the decision of the circuit court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to J.N.J., G.A.J., J.E.B., and J.M.B., the children who are the subject of this appeal.[2] The Halifax County Department of Social Services (the Department) initially became involved with the family in April 2016 after mother tested positive for marijuana. The Department provided ongoing services and referred mother to substance abuse counseling. In February 2017, mother tested positive for "cocaine/metabolites (cocaine, benzoylecgonine, norcocaine), extended opiates (oxycodone), and marijuana." In August 2018, mother tested positive for methamphetamines, cocaine, and opiates.

On September 11, 2018, mother was driving the children, who ranged in age from three to eight years, in Campbell County. After noticing that mother was having car trouble, a police officer stopped to assist. The police officer discovered that mother was driving a stolen car with stolen license plates. Mother was "behaving erratically, and her mental state was questionable." The children, especially J.E.B., were "over exposed to heat and extremely tired," so they were transported to the hospital for an evaluation. The doctors admitted J.E.B. due to his elevated

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] At the time of the circuit court hearing, the ages of J.N.J., G.A.J., J.E.B., and J.M.B. were ten, nine, six, and five years, respectively.

temperature and rapid breathing. The children had a "lingering stench and appeared to have not bathed for several days evidenced by dirt in the crevasses of their feet, under their nails, knots in [their] hair, and sticky patches of dirt on their skin."

The Department removed the children from mother's care and placed them in foster care. The Halifax County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected and entered dispositional orders. Mother did not appeal the dispositional orders.

The Department required mother to complete a "Parenting/Substance Abuse Psychological Assessment" and follow all recommendations. The Department also required mother to participate in random drug screens, continue case management and medication management with Southside Community Services Board, obtain substance abuse treatment with Southside Community Services Board, and remain drug free. In addition, the Department required mother to maintain stable housing, as well as to participate in parenting classes.

The Department offered supervised visitation to mother. Although mother always expressed an interest in visiting the children, she was late to several visits and missed some visits. Generally, however, mother's visits went "well."

While mother routinely visited the children, she did not meet all of the other requirements. Mother failed to maintain consistent contact with the Department, which attempted on numerous occasions to update her and provide referrals to no avail. The Department scheduled a psychological evaluation for mother and mailed her the necessary paperwork to complete. Mother missed the first appointment, claiming she had strep throat. The Department made several additional attempts to assist mother with rescheduling the psychological evaluation, but mother never went to the appointments.

Mother also continued to use illegal drugs and did not appear for all drug screens.[3]  In December 2018, mother tested positive for methamphetamines and cocaine/metabolites.  In February 2019, mother tested positive for amphetamines, methamphetamines, cocaine/metabolites, and THC metabolite.  In March 2019, mother tested positive for amphetamines, methamphetamines, and cocaine/metabolites.  In April, May, June, and August 2019, mother tested positive for amphetamines, methamphetamines, cocaine/metabolites, and THC metabolite.  Meanwhile, the Department continued to provide mother with referral information for services.

On September 18, 2019, mother was arrested for distributing "some of [her] medication," to which she later pleaded guilty.[4]  Mother remained incarcerated until November 27, 2019, when she was released on bond.  Shortly after being released, mother tested positive for methamphetamines, which violated her pre-trial supervision.  Consequently, mother was incarcerated again until February 13, 2020.

On March 11, 2020, the JDR court terminated mother's parental rights and approved the foster care goal of adoption.[5]  Mother appealed the JDR court's rulings to the circuit court.

In the Spring of 2020, mother began to engage in some services.  The Department previously had found that mother's housing was not suitable; however, she obtained and maintained new housing that was appropriate for the children.  She also obtained employment.

---

[3] Mother informed the circuit court that she had a valid prescription for amphetamines.

[4] The offense dates were July 18 and 20, 2018, while mother was receiving services from the Department.

[5] The JDR court terminated the parental rights of J.E.B.'s and J.M.B.'s biological father. After appealing the rulings to the circuit court, J.E.B.'s and J.M.B.'s biological father agreed to a voluntary termination of his parental rights, and the circuit court entered orders terminating his parental rights to J.E.B. and J.M.B.  The JDR court also terminated the parental rights of G.A.J.'s and J.N.J.'s biological father, who agreed to a voluntary termination of his parental rights and did not appeal.

In addition, mother started substance abuse counseling, maintained "more consistent" contact with the Department, and regularly visited with the children. To give mother more time to demonstrate her progress, the Department moved to continue the circuit court hearing scheduled for June 22, 2020.

In July 2020, mother tested positive for methamphetamines. Mother admitted to the Department that she "had messed up" by using drugs again and had spoken with her counselor about it. In August 2020, mother reported attending Narcotics Anonymous meetings.

The Department asked mother to submit to a urine screen on September 4, 2020, but she did not appear for the test. On September 18, 2020, mother took the drug test, which showed a negative result; however, the Department questioned the results because the delay allowed mother to "detox or have time in between there to change results or work to change results." The Department remained concerned about the possibility of mother's continued drug use.

On September 25, 2020, the parties appeared for the circuit court hearing. The Department presented evidence that after entering foster care, J.E.B. and J.M.B. participated in speech therapy and play therapy to address their speech and developmental delays. Both J.E.B and J.M.B. attended preschool, and J.E.B. received services through an Individual Education Plan. G.A.J. also participated in speech and outpatient therapy to address his speech and language development, as well as the "traumatic events in his life." G.A.J. attended elementary school, where he received services through an Individual Education Plan. J.N.J. participated in outpatient therapy to address her anxiety and trauma.

At the time of the circuit court hearing, the children were "doing well" and appeared "quite happy, well adjusted." J.N.J. and G.A.J. were placed together in a foster home, while J.E.B. and J.M.B. were placed together in a separate foster home. The children were in

pre-adoptive homes and lived approximately five minutes apart from one another, so they regularly interacted with one another.

At the conclusion of the Department's evidence, mother moved to strike, which the circuit court denied. Mother testified that she had been working full-time since July 2020.[6] Mother admitted that she did not have a childcare plan for when she was working. Mother also reported that she had scheduled a psychological evaluation for October 2, 2020. In addition, mother testified that she signed up for a forty-five-day rehabilitation program. Acknowledging her past mistakes, mother claimed that she could remain sober and care for the children.

After hearing the evidence and arguments, the circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that termination of her parental rights was in the children's best interests. She contends that the circuit court "improperly declined to

_____

[6] Mother explained that she had another job in May 2020, but it did not last long.

assign appropriate weight to [her] progress on things like housing, securing employment, and the time frame of sobriety." Mother stresses that "[s]obriety is often a winding and non-linear path."

"'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 331 (2016) (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

The circuit court found that "mother obviously has a substance abuse issue . . . ." The circuit court was concerned that while the children were in foster care, mother was arrested for a felony drug charge, to which she pleaded guilty, and she continued to use drugs while on pre-trial supervision. The record reflects that the Department attempted to offer numerous services to mother. The circuit court even noted that it had not "seen a case in which the Department of Social Services ha[d] spent more time and effort trying to help [mother]," but mother continued to use drugs. The circuit court found that even after the Department agreed to continue the circuit court hearing to give mother time to demonstrate her progress, she tested positive for drugs and avoided taking another drug test on September 4, 2020.

The circuit court concluded that "the situation that led to these children being taken is not going to stop . . . ." "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 425 (2012) (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

At the time of the circuit court hearing, the children had been in foster care for approximately two years. The circuit court found that the children were doing "wonderfully

well" in foster care.  Mother admittedly was not in a position to care for the children, as she had not complied with the Department's requirements, had no plans for childcare, and anticipated enrolling in a rehabilitation program.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).  Considering the totality of the evidence, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(B) and (C)(2).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.